Case No. 2:19-cv-16054-ES

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

## ARIEL BAREL
v.
## FEDERAL NATIONAL MORTGAGE
## ASSOCIATION

## IN RE: ARIEL BAREL
### Debtor

**Bankruptcy Case No.: 19-11416 (JKS)**

**Chapter 7**

**On Appeal from Order(s) of the United States Bankruptcy Court**

### APPELLANT'S OPENING BRIEF FOR ARIEL BAREL

Ariel Barel, sui juris
114 Warbler Drive
Wayne, New Jersey
973-460-4444
abar4444@gmail.com

I

# TABLE OF CONTENTS

**SECTION**                                                          **PAGE NO.**

TABLE OF CASES AND AUTHORITIES..........................................IV, V, VI, VII

BANKRUPTCY CODE.........................................................................VIII

BANKRUPTCY RULES............................................................................IX

FEDERAL STATUTES...…………….…………...............................................IX

FEDERAL RULES.................................................................................IX

STATEMENT OF JURISDICTION…………………….…….......………………1

STATEMENT OF THE ISSUES......…………………………..…………...……....1

STATEMENT OF THE CASE ................................................................................2

PROCEDURAL HISTORY.....................................................................................4

SUMMARY OF ARGUMENT...................……………………………………....7

ARGUMENT ...............................................................……………...............8

    A.    Bankruptcy Court Erred and/or abused its Discretion in Denying
            Appellant's Motion for an Order to enforce the Automatic
            Stay/Injunction.……...............................................................................8

    B.    Bankruptcy Court Erred and/or abused its Discretion when it granted,
            Fannie Mae's motion for Relief from Automatic Stay pursuant to 11
            U.S.C. 362(d)(4)that was already decided on April 9, 2019..............13

    C.    Fannie Mae Requested Relief Is Not Warranted Under 11 U.S.C.
            §362(D)(4)..........................................................................................17

D.   Bankruptcy Court erred in granting Fannie Mae motion for Lift of
     Automatic Stay after the Res was abandoned by the bankruptcy
     trustee, the court lacked In Rem jurisdiction over the Res.................28


CONCLUSION…......................................................................................................29

CERTIFICATE OF COMPLIANCE………........……….………………………30

CERTIFICATE OF SERVICE………...........………….……………………….30

## TABLE OF CASES AND AUTHORITIES

Adams v. Hartconn Assocs., Inc. (In re Adams),
212 B.R. 703, 710 (Bankr.D.Mass.1997)....................................................................12

Catalano v. Commissioner Internal Revenue,
279 F.3d 682, 685 (9th Cir.2002)..............................................................................27

Cf. Maty v. Grasselli Chemical Co.,
303 U. S. 197...............................................................................................................8

Conley v. Gibson
355 U.S. 41 at 48(1957)................................................................................................8

Coopers & Lybrand v. Livesay,
437 U.S. 463, 467 (1978)..............................................................................................1

Coronado v. Beach Furniture & Appliance (In re Coronado),
11 B.R. 8, 9 (Bankr.D.Ariz.1981)...............................................................................12

Darr v. Burford,
339 U.S. 200 (1950).......................................................................................................8

Erie Telecommunications,
659 F.Supp. at 585.......................................................................................................16

Gassaway v. Fed. Land Bank of New Orleans (In re Gassaway),
28 B.R. 842, 846 (Bankr.N.D.Miss.1983)..................................................................13

Gen. Motors Acceptance Corp. v. Bell (In re Bell),
700 F.2d 1053, 1057–58 (6th Cir.1983).....................................................................12

Guild Mortgage Co. v. Cornist (In re Cornist)
7 B.R. 118, 120 (Bankr.S.D.Cal.1980).......................................................................12

Haines v. Kerner,
404 U.S. 519-20, (1972)............................................................................................8

Hall v. Bellmon,
935 F.2d 1106, 1110 (10th Cir. 1991).......................................................................8

Hoffman v. U.S.,
244 F.2d 378, 379 (9th Cir. 1957).............................................................................8

In re Banks,
577 B.R. 659 (2017)................................................................................................10

In re Braus,
248 F. 55, 64 (2d Cir.1917).....................................................................................25

In re Cruseturner,
8 B.R. 581, 592 (Bankr.D.Utah 1981).....................................................................13

In re D'Annies,
15 B.R. at 831..........................................................................................................13

In re DeVore,
223 B.R. 193, 200 (9th Cir. BAP 1998).............................................................27, 28

In re Dewsnup,
908 F.2d 588, 590 (10th Cir. 1990), *aff'd* 502 U.S. 410, 112 S.Ct. 773, 116
Ed.2d 903 (1992)....................................................................................................28

In re Falcon Prods., Inc.,
497 F.3d 838, 840-41 (8th Cir. 2007)........................................................................1

In re Gasprom, Inc.,
500 B.R. 598 (2013)................................................................................................12

In re IBI Sec. Serv., Inc.,
174 B.R. 664, 668 (E.D.N.Y. 1994)............................................................................1

In re Klein,
940 F.2d 1075, 1077 (7th Cir. 1991).........................................................................2

In re Lair,
235 B.R. 1, 21–22 (Bankr.M.D.La.1999)...........................................................12, 13

In re Muhaimin,
343 B.R. 159, 167 (Bankr. D. Md. 2006).................................................................19

In Re: Nortel Networks, Inc.,
3rd Cir. No. 11-1895...............................................................................................10

In re RFE Indus., Inc.,
283 F.3d 159, 164 (3d Cir.2002).............................................................................15

In re Vicente,
446 B.R. 26, 29–30 (Bankr.D.Mass.2011)...............................................................12

In re Young,
No. 06-80534, 2007 WL 128280, at *8–10
(Bankr. S.D. Tex. Jan. 10, 2008).............................................................................19

Irving Trust Co. v. Chase Nat'l Bank,
65 F.2d 409, 412 (2d Cir.1933)...............................................................................25

Javens v. City of Hazel Park (In re Javens),
107 F.3d 359, 363 (6th Cir. 1997) ..........................................................................10

Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.,
474 U.S. 494, 503 (1986)...................................................................................3, 10

Morlan v. Universal Guar. Life Ins. Co.,
298 F.3d 609, 617 (7th Cir.2002)............................................................................27

Mut. Ins. Co. of New York v. County of Fresno (In re D. Papagni Fruit Co.)
132 B.R. 42, 45 (Bankr.E.D.Cal.1991)....................................................................12

Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.),
129 F.3d 1052, 1054 (9th Cir.1997)........................................................................14

Owings v. Hull,
9 Pet. 607, 629, 9 L. Ed. 246..................................................................................14

Richardson v. Germania Bank,
263 F. 320, 324 (2d Cir.1919).................................................................................25

Sargent v. Blake,
160 F. 57 (8th Cir.1908)..........................................................................................25

Traguth v. Zuck,
710 F.2d 90, 95 (2nd Cir. 1983)..................................................................................8

United States v. Hinkson,
585 F.3d 1247, 1262 (9th Cir.2009)........................................................................14

Western National Bank v. Armstrong,
152 U. S. 346, 352, 14 Sup. Ct. 572, 38 L. Ed. 470................................................14

Western Resources, Inc. v. Union Pacific Railroad Co.,
2002 WL 1462004, *7 (D.Kan.2002).......................................................................16

Wheeling–Pittsburgh Steel Corp. v. McCune,
836 F.2d 153, 162–63 (3d Cir.1987).......................................................................15

Williams v. Levi (In re Williams)
323 B.R. 691, 696 (9th Cir. BAP 2005)....................................................................14

Williams v. Vreeland,
250 U.S. 295, 39 S.Ct. 438.........................................................................................14

Young v. Twin States Fin., Inc. (In re Young),
2012 WL 1189900, at *5–6 (Bankr.S.D.Miss.2012)..................................................12

## BANKRUPTCY CODE

11 U.S.C.101...........................................................................................................20, 22

11 U.S.C. 362(a)...........................................................................................................10

11 U.S.C. 362(a)(1).......................................................................................................10

11 U.S.C. 362(a)(5)..............................................................................................12, 13, 14

11 U.S.C. 362(a)(6).......................................................................................................10

11 U.S.C. 362(b)(4).......................................................................................................27

11 U.S.C. 362(b)(4)(D).............................................................................................21, 27

11 U.S.C. 362(c)(1).......................................................................................................13

11 U.S.C. 362(c)(2).......................................................................................................12

11 U.S.C. 362(d)...........................................................................................................12

11 U.S.C. 362(d)(4)....................2, 3, 7, 9, 13, 14, 15, 16, 17, 18, 19, 21, 24, 25, 26

11 U.S.C. 362(d)(4)(A)....................................................................18, 19, 20, 21, 27

11 U.S.C. 362(d)(4)(B)...........................................................................................19, 27

11 U.S.C. 547(a)(1).......................................................................................................24

11 U.S.C. 548(a)(1).......................................................................................................24

11 U.S.C. 727(a)(2).......................................................................................................24

## BANKRUPTCY RULES

Fed. R. Bankr. P. 4001(a)(3)......................................................................................7

Fed. R. Bankr. P. 7054(a)..........................................................................................2

Fed. R. Bankr. P. 8001(a)..........................................................................................1

Fed. R. Bankr. P. 9014...............................................................................................2

## FEDERAL STATUTES

28 U.S.C. § 158(a).....................................................................................................1

28 U.S.C. § 158(a)(1).................................................................................................1

28 U.S.C. § 158(d).....................................................................................................1

## FEDERAL RULES

Fed. R. Civ. P. 54(b).................................................................................................2

## STATEMENT OF JURISDICTION

In bankruptcy proceedings, the district court acts as an appellate court and reviews the Bankruptcy Court's legal determinations de novo and findings of fact for clear error. In re Falcon Prods., Inc., 497 F.3d 838, 840-41 (8th Cir. 2007). The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). The District Court's review in its capacity as an appellate court is plenary. A bankruptcy court order lifting Automatic Stay is a final order and appealable as of right order. This Court has jurisdiction to hear the appeal of the bankruptcy court's order pursuant to 28 U.S.C. § 158(a)(1).

**(a)** The district courts of the United States shall have jurisdiction to hear appeals
     **(1)** from final judgments, orders, and decrees;

Any "final judgment, order, or decree of a bankruptcy judge" may be *appealed.* 28 U.S.C. § 158(a), Fed. R. Bankr. P. 8001(a) (district courts from bankruptcy courts); 28 U.S.C. §§ 158(d). An order is "final" for appeal purposes when a decision has been entered that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. " Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978); In re IBI Sec. Serv., Inc., 174 B.R. 664, 668 (E.D.N.Y. 1994).

In bankruptcy proceedings, finality does not require the entire case to be concluded; rather, due to the extended nature and a large number of parties

1

involved in a bankruptcy case, finality is applied to discrete disputes that arise within the larger case. Most courts look at contested matters and adversary proceedings as "stand alone units of litigation" and determine whether the order appealed from disposes of all the claims of all the parties. See Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054(a), 9014; In re Klein, 940 F.2d 1075, 1077 (7th Cir. 1991);

The Bankruptcy Court's orders dated June 30, 2019, Doc 54 and Doc 55. The Notice of Appeal was filed on June 30, 2019. Doc 53. Appellant invokes Federal Rules of Evidence to govern this appeal.

## STATEMENT OF THE ISSUES

1.      Did the Bankruptcy Court erred and/or abused its discretion when it granted, Fannie Mae's motion for Relief from Automatic Stay that was already decided on April 9, 2019.

2.      Did the Bankruptcy Court erred and/or abused its discretion when it granted Fannie Mae motion for Relief from Automatic Stay on July 30, 2019, (Doc 54) post debtor discharge which was granted on April 18, 2019. (Doc 33)

3.      Did the Bankruptcy Court err and/or abused its discretion in Denying Barel's motion (Doc 42) to enforce the injunction that replaced the Automatic Stay after debtor discharge.

4.      Did the Bankruptcy Court err and/or abused its discretion in granting the lift

2

of automatic stay in violating the fundamental protections for debtors found in the Bankruptcy Code and Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986).

## STATEMENT OF THE CASE

5.     Appellant seeks relief from this Court based upon clearly erroneous and/or abuse of discretion decisions made by the bankruptcy court on July 30, 2019. (**A522-A523**, Doc 54 and **A524-A526**, Doc 55):

a. Denying Appellant Motion to issue an Order to Enforce the Automatic Stay/Injunction, (**A522-A523**, Doc 54)

b. Granting FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae") motion for the Lift of Automatic Stay on July 30, 2019, a motion that was already decided on April 9, 2019. (**A456-A457**, Doc 31)

c. Bankruptcy Court erred in granting Fannie Mae motion for Lift of Automatic Stay after the Res was abandoned by the bankruptcy trustee, the court lacked jurisdiction over the Res.

d. Bankruptcy Court erred in granting Fannie Mae motion for Lift of Automatic Stay after the debtor was discharged. (**A461-A462**, Doc 33)

e. Granting Fannie Mae motion for the Lift of Automatic Stay which was not warranted under 11 U.S.C. 362(d)(4).

## PROCEDURAL HISTORY

6.      On January 23, 2019 ("Petition Date"), Barel filed a Chapter 7 proceeding in the United States Bankruptcy Court, for the District of New Jersey.

7.      *Eight days later* on January 31, 2019, Fannie Mae filed an "In Rem" motion for relief from the automatic stay (Doc 12) for real property claiming to be "Secured Creditor" basing its motion on an assignment of Ditech's $100.00 bid for the sale of the property valued at $435,000 at the sheriff's sale as well as on 11 U.S.C. 362(d)(4) claiming that Barel is frequent bankruptcy filer. Prior to January 23, 2019, Bankruptcy petition, Barel last bankruptcy filing was in the year 2000.

8.      On April 2, 2019, Barel has filed an objection to Fannie Mae motion for the lift of automatic stay (Doc 27) the objection contained as Annex A the Second Amended Complaint filed in the Federal Court as Related Case, which was also filed as Bankr. Doc 21.

9.      Fannie Mae never filed any reply to any argument Barel raised in his objection.

10.     The hearing for the motion for relief from the automatic stay was scheduled for April 9, 2019, at which time the court heard oral arguments on the motion to lift the Automatic Stay. To the court's total surprise Fannie Mae's and its counsel failed to show up at the hearing for its own motion. The counsel was present in the courtroom that morning but left after checking the schedule. The court made an

4

earnest effort to locate the counsel for Fannie Mae, however, he was not to be found. The court concluded that maybe Fannie Mae's counsel abandoned the case, Barel has agreed with the court that perhaps due to the seriousness of the criminal complaint filed with the U.S. Attorney's office against the law firm representing Fannie Mae and other's it would be logical to reach such conclusion. (Doc 31)

11.     April 9, 2019, Bankruptcy Docket Entry indicates as follows:

"Minute of Hearing Held, OUTCOME: Motion Granted. Stay relief is granted for the limited basis to allow the appeal pending in the New Jersey appellant division to proceed. **No appearance by counsel for the bank**. (related document(s): 12 Motion for Relief From Stay filed by FEDERAL NATIONAL MORTGAGE ASSOCIATION) (mg) (Entered: 04/09/2019)" [emphases added]

12.     The court granted Barel's motion to lift the Automatic Stay only on a limited basis strictly for the purpose for the state court to conclude Barel's appeal. Fannie Mae did not object to the order. (Doc 31)

13.     On May 14, 2019, the court heard oral arguments on the Notice of Proposed Abandonment of the Real property. The court overruled Barel's objection and on May 22, 2019, the court entered an order approving Trustee's abandonment of the Real Property out of the bankruptcy estate.

14.     On April 18, 2019, the Bankruptcy Court entered an Order discharging the Debtor. (Doc 33)

5

15.    On May 22, 2019, the same day when bankruptcy court entered the order

approving Trustee's abandonment of the Real property (Doc 38), Phelan Hallinan

Diamond & Jones PC. filed new Writ of Possession in a state court. The Notice of

Eviction (Notice 2) was served upon Barel on or about July 6, 2019, demanding

the surrender of the property on July 31, 2019.

16.    On June 6, 2019, Barel has filed a motion (Doc 42) for An Injunction or An

Order To Enforce The Automatic Stay.

17.    On July 9, 2019, Ditech Financial LLC, NOT Fannie Mae has filed an

objection to Doc 42 motion. (Doc 45)

18.    On July 9, 2019, Barel has filed Reply to the objection. (Doc 46)

19.    The hearing was held on July 16, 2019, at which time Nicholas V. Rogers

from Phelan law firm entered an appearance on behalf Ditech Financial LLC. Barel

has objected to Ditech's appearance in the case being itself in Bankruptcy and

having no interest in the property after assigning the so-called "winning bid" over

to Fannie Mae and over Barel's objection Judge Sherwood allowed Ditech to

proceed. Fannie Mae was not present on June 16, 2019.

20.    The Bankruptcy Court did not make any decision on July 16, 2019, and

rescheduled the hearing for July 30, 2019, allowing counsel for Ditech to revive

the motion for the Lift of Automatic Stay, after the debtor was discharged on April

18, 2019, which was filed by Fannie Mae on January 31, 2019, (Doc 12) the same

6

motion that was already decided and the one that Fannie Mae failed to show up at or oppose.

21. On July 30, 2019, Bankruptcy court has denied Barel's Motion for An Injunction or An Order To Enforce The Automatic Stay and granted Fannie Mae January 31, 2019 motion, which was already decided. The counsel for Ditech, after Barel questioned who he represents stated that he now represents Fannie Mae, despite the fact that his filing clearly states that he represents Ditech.

## SUMMARY OF THE ARGUMENT

Appellant seeks relief from this Court based upon clearly erroneous and/or abuse of discretion decisions made by the bankruptcy court on July 30, 2019. (**A522-A523**, **Doc 54 and A524-A526, Doc 55**) Appellant was entitled to an Order to Enforce the Automatic Stay/Injunction. Fannie Mae was not entitled to the Lift of Automatic Stay on July 30, 2019, a motion that was already decided on April 9, 2019, the bankruptcy trustee abandoned the property, as a result, the court lacked jurisdiction over the Res.

Fannie Mae was not entitled to the Lift of Automatic Stay on July 30, 2019, after the debtor was discharged on April 18, 2019. Fannie Mae was not entitled to the Lift of Automatic Stay under 11 U.S.C. 362(d)(4). Bankruptcy Court erred in concluding that that Rule 4001(a)(3) is not applicable to Fannie Mae.

22.     Appellants' pleadings are requested to be construed by "less stringent standards". See *Haines v. Kerner*, 404 U.S. 519-20, (1972). An unrepresented litigant should be given a reasonable opportunity to remedy defects in his [or her] pleadings if the factual allegations are close to stating a claim for relief. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly such pleadings should be held to a less stringent standard than those drafted by licensed, practicing attorneys. Implicit in the right of self-representation is an obligation on the part of any court to make reasonable allowances to protect *unrepresented* litigants from inadvertent forfeiture of important Rights because of any lack of formal legal training. See Traguth v. Zuck, 710 F.2d 90, 95 (2nd Cir. 1983); Hoffman v. U.S., 244 F.2d 378, 379 (9th Cir. 1957); Darr v. Burford, 339 U.S. 200 (1950).

23.     Justice Black in Conley v. Gibson, 355 U.S. 41 at 48(1957) said "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome, and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. *Cf. Maty v. Grasselli Chemical Co.,* 303 U. S. 197."

### ARGUMENT

**A.**    **Bankruptcy Court Erred and/or abused its Discretion in Denying Appellant's Motion for an Order to Enforce the Automatic Stay/Injunction.**

24.     On January 23, 2019, Barel filed the within petition under Chapter 7 of Title

8

11 of the United States Code. (Doc 1)

25.     On January 31, 2019, Fannie Mae filed an "In Rem" motion for relief from the Automatic Stay for real property claiming to be "Secured Creditor" basing its motion 11 U.S.C. 362(d)(4).

26.     On April 2, 2019, Barel has filed an objection to Fannie Mae motion for the lift of automatic stay (**A284-A367,** Doc 27) Barel opposed the motion and asked the court to grant a limited lift of Automatic Stay only for the purpose of the state court to complete its appeal.

27.     Fannie Mae never filed a reply to Barel's opposition, exhibiting intentional acquiescence, thus effectively agreeing with Barel's statements and facts.

28.     Furthermore, Fannie Mae and its counsel never appeared at the motion for Lift of Automatic Stay hearing on April 9, 2019. (**1T**, P. 2, Line 3-10, Line 15-18)

29.     The court granted Barel's request to lift the Automatic Stay only on a limited basis for the state court to conclude Barel's appeal. **The Automatic Stay remained in effect. (1T**, P. 3, Line 14-20, P. 4, Line 25, P.5, Line 1) Fannie Mae did not object to the order.

30.     On May 22, 2019, Phelan Hallinan Diamond & Jones PC. filed new Writ of Possession in a state court demanding the surrender of the property on July 31, 2019. This filing in state Court is in violation of the Automatic Stay.

31.     "Willful" violation of the automatic stay does not require specific intent to

9

violate the stay, only knowledge of the stay and an intentional act. 11 U.S.C.A. §§ 362(a), 362(k)(1)." In re Banks, 577 B.R. 659 (2017)

32. "When a debtor files for bankruptcy, Section 362(a) of the Bankruptcy Code imposes a broad automatic stay. That stay prohibits - all entities from, inter alia, - the commencement or continuation . . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title 11 U.S.C. § 362(a)(1), (6). The automatic stay provides *one of the fundamental protections for Debtor found in the Bankruptcy Code.* See, e.g., Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986). See In Re: Nortel Networks, Inc., 3rd Cir. No. 11-1895.

33. Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case
> . . . .

34. 11 U.S.C. § 362(a). The Automatic Stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure

10

actions." Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 363 (6th Cir. 1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296).

35. Based on Fannie Mae's filing of the new Writ of Possession Barel filed a motion to enforce the Automatic Stay (**A471-A486**, Doc 42).

36. Phelan Hallinan Diamond & Jones PC has filed a certification on behalf of Ditech Financial, LLC, objecting to the motion. (**A487-A505**, Doc 45) Fannie Mae filed nothing.

37. On July 16, 2019, the Bankruptcy Court held a hearing on Barel's motion. (**2T**, Transcript, Doc 59)

38. Phelan Hallinan Diamond & Jones PC has appeared on behalf of Ditech Financial LLC. Fannie Mae did not appear.

39. At the hearing, the bankruptcy court has confirmed that the Automatic Stay is in effect. (**2T,** Page 6, Line 16-23)

40. In a total surprise to Barel, at the hearing Ditech Financial LLC raised a request to hear the motion for the Lift of Automatic Stay, even though Ditech never filed one. (**2T,** P. 6, Line 24-25, P. 7, Line 1-2) Barel's motion (Doc 42) and Fannie Mae's motion (Doc 12) even though it was already decided on were rescheduled for July 30, 2019.

41. The Bankruptcy Court has erred in denying Barel's motion to enforce the

11

Automatic Stay/Injunction even though the court has confirmed on the record it was still in effect on July 16, 2019, even after the abandonment of the property and debtor's discharge.

42.     By operation of law, May 22, 2019, Abandonment Order only terminated one aspect of the stay, the aspect protecting Barel as "property of the estate."

43.     "But the abandonment did not by operation of law terminate the aspect of the stay arising from § 362(a)(5), which protects "property of the debtor." Absent a ruling by the court granting relief from stay under § 362(d) so as to permit foreclosure to occur, § 362(a)(5) continued to protect the Gas Station from foreclosure, at least until the bankruptcy court closed Gasprom's bankruptcy case on August 16, 2012. *See* § 362(c)(2)." See In re Gasprom, Inc., 500 B.R. 598 (2013)

44.     Several bankruptcy cases have similarly interpreted the effect of abandonment on the automatic stay. *See, e.g., Mut. Ins. Co. of New York v. County of Fresno (In re D. Papagni Fruit Co.),* 132 B.R. 42, 45 (Bankr.E.D.Cal.1991); *Coronado v. Beach Furniture & Appliance (In re Coronado),* 11 B.R. 8, 9 (Bankr.D.Ariz.1981); *Guild Mortgage Co. v. Cornist (In re Cornist),* 7 B.R. 118, 120 (Bankr.S.D.Cal.1980); *see also Gen. Motors Acceptance Corp. v. Bell (In re Bell),* 700 F.2d 1053, 1057–58 (6th Cir.1983); *Young v. Twin States Fin., Inc. (In re Young),* 2012 WL 1189900, at *5–6 (Bankr.S.D.Miss.2012); *In re Vicente,* 446

B.R. 26, 29–30 (Bankr.D.Mass.2011); *Adams v. Hartconn Assocs., Inc. (In re Adams),* 212 B.R. 703, 710 (Bankr.D.Mass.1997); *In re Lair,* 235 B.R. 1, 21–22 (Bankr.M.D.La.1999); *Gassaway v. Fed. Land Bank of New Orleans (In re Gassaway),* 28 B.R. 842, 846 (Bankr.N.D.Miss.1983); *In re Cruseturner,* 8 B.R. 581, 592 (Bankr.D.Utah 1981). These cases stand for the general proposition that abandoned property continues to be protected by the automatic stay to the extent it has reverted back to the debtor. *Accord,* H.R.Rep. No. 95–595 at 343 (1977) (stating that, while § 362(c)(1) terminates the automatic stay as to estate property when the subject property is no longer estate property, that provision "does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor.").

45. *In re D'Annies,* 15 B.R. at 831, the bankruptcy court held that, after abandonment of estate property, § 362(a)(5) protects a debtor from the foreclosure of that property.

46. he Bankruptcy Court erred and/or abused its discretion in denying Barel's motion to enforce the provisions of the Automatic Stay pertaining to May 22, 2019, Writ of Possession, intentionally taken out by Phelan Hallinan Diamond & Jones PC in violation of the Automatic Stay and in contempt of court.

**B. Bankruptcy Court Erred and/or abused its Discretion when it granted, Fannie Mae's motion for Relief from Automatic Stay pursuant to 11 U.S.C. 362(d)(4)**

13

47. The Bankruptcy Court abused it's discretion when it retroactively annulled the Automatic Stay.

48. In Rem Relief from Stay. Theoretically, any order granting relief from stay is an "in rem" order since the code's stay relief provisions deal with adequate protection for an "interest in property" or an "act against property" and generally refers to the new provisions of 11 USC 362(d)(4).

49. A bankruptcy court's decision to retroactively annul the automatic stay is reviewed for an abuse of discretion. *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.),* 129 F.3d 1052, 1054 (9th Cir.1997); *Williams v. Levi (In re Williams),* 323 B.R. 691, 696 (9th Cir. BAP 2005).

50. A bankruptcy court abuses its discretion if its decision is based on an incorrect legal rule, or if its findings of fact were illogical, implausible, or without support in the record. *United States v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir.2009) (en banc).

51. On January 31, 2019, Fannie Mae filed an "In Rem" motion for relief from the Automatic Stay for real property claiming to be "Secured Creditor" basing its motion on 11 U.S.C. 362(d)(4).

52. Fannie Mae never filed a reply to Barel's opposition, exhibiting intentional acquiescence, thus effectively agreeing with Barel's statements and facts. "Approval, ratification, and acquiescence all presuppose the existence of some

14

actual knowledge of the prior action and what amounts to a purpose to abide by it. Owings v. Hull, 9 Pet. 607, 629, 9 L. Ed. 246; Western National Bank v. Armstrong, 152 U. S. 346, 352, 14 Sup. Ct. 572, 38 L. Ed. 470." See Williams v. Vreeland, 250 U.S. 295, 39 S.Ct. 438.

53.     Furthermore, Fannie Mae and its counsel never appeared at the motion for the Lift of Automatic Stay hearing on April 9, 2019 and are estopped pursuant to the doctrine of estoppel, equitable estoppel, and quasi-estoppel. In fact, the bankruptcy judge thought and Barel agreed with that assessment that Fannie Mae abandoned the case, i.e. "dropped the ball" as the put it. (**1T,** P. 6, Line 12-25)

54.     The doctrine of estoppel applies where it would be unconscionable to permit a person to maintain a position inconsistent with one in which he acquiesced or where he accepted a benefit. The "conscience of the court" is repelled by the inconsistency.

55.     Equitable estoppel results from "voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse.

56.     Fannie Mae never opposed Barel's opposition to the motion for relief from the Automatic Stay it filed on January 31, 2019, (Doc 12) Fannie Mae intentionally

15

did not show up to the hearing even though its counsel was present in the room before the court session started. Fannie Mae was and is estopped from having the motion heard again.

57.     Fannie Mae is also equitably estopped "Equitable estoppel applies when one party rightfully relies on an intentional or negligent representation of fact by another party, who is estopped from later denying that representation because the relying party would be injured." *See In re RFE Indus., Inc.,* 283 F.3d 159, 164 (3d Cir.2002) (*quoting Wheeling–Pittsburgh Steel Corp. v. McCune,* 836 F.2d 153, 162–63 (3d Cir.1987).

58.     Fannie Mae's motion misrepresented to the court that Barel is a multiple filer and as a result asked the court to grant its motion for Lift of Automatic Stay pursuant to 11 U.S.C. 362(d)(4). The misrepresentation was intentional, Fannie Mae knew or should have known that Barel is not a multiple filer, the instant bankruptcy case was dismissed due to the clerks losing/misplacing Barel's filing of the schedules.

59.     The court acknowledged its error and Judge Sherwood personally apologized to Barel for inadvertent misgiving on the part of the court at the hearing for reinstatement of the case. Prior to the instant bankruptcy filing, Barel has filed for bankruptcy protection in the year 2000. Counsel for Fannie Mae has access to the court's records and certainly was aware of these facts.

16

60.     On July 16, 2019, counsel for Fannie Mae has represented to the court, that he represents Ditech Financial LLC and asked the court to hear the In Rem motion for the Lift of Automatic Stay, which was filed by Fannie Mae. Barel questioned that fact (**2T**, P. 2, Line 8-9)

61.     On July 30, 2019, Counsel changed his position and when questioned by Barel who he represents, the counsel stated that now he represents Fannie Mae. Barel was prepared and was relying on counsel's previous representation on July 16, 2019, that he was representing Ditech on the motion for the Lift of Automatic Stay when he asked to have it heard on July 16, 2019.

62.     Fannie Mae is also quasi-estopped,  "In common parlance, quasi-estoppel translates into the maxim that "one cannot blow both hot and cold". *Erie Telecommunications,* 659 F.Supp. at 585. Put another way, it is but an application of the maxim that "one cannot eat his cake and have it too". *Western Resources, Inc. v. Union Pacific Railroad Co.,* 2002 WL 1462004, \*7 (D.Kan.2002).

## C.     Fannie Mae Requested Relief Is Not Warranted Under 11 U.S.C. § 362(D)(4)

63.     Bankruptcy Court erred in granting the motion for the lift of the Automatic Stay pursuant to 11 U.S.C. 362(d)(4).

64.     Fannie Mae asked the bankruptcy court to grant its motion pursuant to 11 U.S.C. § 362(d)(4), Fannie Mae bases its motion on the fact that the court has entered an order to show cause on the same day of the filing on January 23, 2019,

17

and thereafter dismissed the case. The court has graciously acknowledged at the hearing to reinstate the case that the dismissal was premature and an error.

65.     The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added subsection (d)(4) to § 362. The general purpose of this subsection, according to the legislative history, is to curb abusive bankruptcy filings. *See* H.R. Rep. No. 109–31(1) at 70 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 138–39.

66.     11 U.S.C. § 362(d)(4) provides:

**(4)** with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--

**(A)** transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

**(B)** multiple bankruptcy filings affecting such real property.

67.     A secured creditor, which Fannie Mae has not shown that it is, seeking in rem relief from automatic stay, on theory that debtor exhibited a lack of good faith in filing a series of petitions as part of scheme to delay, hinder, and defraud, must meet a substantial evidentiary burden; such in rem relief is granted only in extreme circumstances, where creditor has demonstrated that bankruptcy petition was filed as part of such a scheme. 11 U.S.C.A. § 362(d)(4).

68.     In order for the court to lift the automatic stay under section 362(d)(4), the

18

Debtor's scheme must involve either "(A) [the] transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4).

69. Fannie Mae makes no claim that Barel has filed a relevant prior bankruptcy case. In fact, the last bankruptcy filing Barel has effected was in the year 2000. As mentioned above Barel's ex-wife Karen Barel has filed for Chapter 13 bankruptcy protection on September 30, 2015, Ariel Barel was not part of that filing. In consequence, subpart (B) of § 362(d)(4) is not involved in this case.

70. To prevail on a motion under § 362(d)(4)(A), Fannie Mae must prove the following elements:

(1) it holds a security interest in the real property at issue;

(2) the filing of the petition was part of a scheme;

(3) one purpose of the scheme was to delay creditors;

(4) a second purpose of the scheme was to hinder creditors;

(5) a third purpose of the scheme was to defraud creditors;

(6) the scheme involved a transfer of all or part ownership in real property without the consent of the secured creditor or court approval; and

(7) the creditor had a right to consent to the transfer (absent court approval).

71. However, it is not easy to successfully move for relief from the automatic stay under 11 U.S.C. § 362(d)(4). "[T]he language [in section 362(d)(4)] was

19

deliberately chosen by Congress to impose a substantial burden of proof on secured creditors ...." 3 COLLIER ON BANKRUPTCY ¶ 362.05[19][a]. Collier notes that requiring a high standard on motions under section 362(d)(4) is consistent with the statute's extreme remedy, which halts the automatic stay from applying to the real property in bankruptcy filings for two years. *Id.* Courts have agreed with this approach, only granting relief under section 362(d)(4) in extreme circumstances when a creditor has demonstrated that the bankruptcy petition was filed as part of a scheme to delay, hinder, and defraud creditors. *In re Young*, No. 06-80534, 2007 WL 128280, at *8–10 (Bankr. S.D. Tex. Jan. 10, 2008) (holding that to prevail on a 362(d)(4) motion, a creditor "must demonstrate that the filing of this petition was part of a scheme to 'delay, hinder, and defraud.' "); *In re Muhaimin*, 343 B.R. 159, 167 (Bankr. D. Md. 2006) ("To obtain section 362(d)(4) relief, the court must find three elements to be present," which are (i) a scheme by the debtor, (ii) to delay, hinder and defraud creditors, (iii) involving the actions listed in either section 362(d)(4)(A) or (B)).

72.     Fannie Mae's security interest is NOT adequately shown on the motion in any way shape or form either through a copy of its promissory note and/or mortgage attached to the moving papers showing that Barel is obligated to Fannie Mae. The only alleged claim that Fannie Mae has to the property is that Fannie Mae allegedly had Ditech assign $100.00 bid to Fannie Mae, where Ditech claims

20

to have purchased $435,000.00 property for $100.00 at a Sheriff's sale in a room full of bidders. The court failed to examine all the elements, which are:

**(1) If Fannie Mae holds a security interest in the real property at issue;**

Title 11 of the bankruptcy code under section § 101. Definitions define "security interest" as follows:

**(51)** The term "security interest" means lien created by an agreement.

Fannie Mae's motion fails to show that there is a lien created by an agreement between Fannie Mae and Barel.

**(2) the filing of the petition was part of a scheme;**

### Scheme

73.    For Fannie Mae to obtain relief under § 362(d)(4)(A), the court must find sufficient evidence that the filing of the bankruptcy case was part of a scheme for the purposes specified in § 362(d)(4)(A). Neither the bankruptcy code nor the legislative history gives an indication of what qualifies as a "scheme". Black's Law Dictionary gives the following definition of "scheme":

1.    A systemic plan; a connected or orderly arrangement, esp. of related concepts <legislative scheme>.

2.    An artful plot or plan, usu. to deceive others <a scheme to defraud creditors>.  BLACK'S LAW DICTIONARY P.4188 (8th Ed. 2004).

74.    The second of these definitions is most relevant to § 362(d)(4): an artful plot or plan. An "artful" plot or plan, in this context, the court must take to be a plan

21

adopted for the nefarious purposes specified in the statute: to delay, hinder and defraud creditors through multiple bankruptcy filings or an improper transfer of property.

75.     A scheme is an intentional construct. It does not happen by misadventure or negligence. Thus, § 362(d)(4)(A) scheme is an intentional artful plot or plan to delay, hinder or defraud creditors. It is not common to have direct evidence of an artful plot or plan to deceive others. The party claiming such a scheme must present evidence sufficient for the trier of fact to infer the existence and content of the scheme. Under § 362(b)(4)(D) the statute requires that the scheme relates to the property for which Fannie Mae is the creditor, not just any real property.

76.     Fannie Mae once again on a motion fails to show any evidence of an artful plot or plan to delay, hinder or defraud creditors. The Bankruptcy Court erred in granting Fannie Mae's motion for the Lift of Automatic Stay.

77.     The only scheme and artful plot or plan alleged in this opposition, with actual evidence provided, is done by Fannie Mae, its counsel Phelan Hallinan and others named as parties in the federal civil and criminal complaints filed in this district court.

**(3) one purpose of the scheme was to delay creditors;**

**Scheme to delay, hinder, and defraud**

Title 11 of the Bankruptcy Code under section § 101. Definitions define

22

"creditor" and "claim" as follows:

**(10)** The term "creditor" means--

    **(A)**   entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

**(5)** The term "claim" means--

    **(A)**   right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    **(B)**   right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

78. On the motion, Fannie Mae once again fails to show how is Fannie Mae Barel's "creditor" or has the standing to maintain the "claim" as defined within the bankruptcy code.

**(4) a second purpose of the scheme was to hinder creditors;**

79. The terms "delay", "hinder" and "defraud" are terms of art in the legal system and in bankruptcy law. The juxtaposition of these terms has a history of several centuries in the common law, where they have consistently been a part of both fraudulent transfer law and bankruptcy law.

80. The terms "delay", "hinder" and "defraud" are terms of art in the legal system and in bankruptcy law. The juxtaposition of these terms has a history of several centuries in the common law, where they have consistently been a part of

both fraudulent transfer law and bankruptcy law.

81.    For example, the first English bankruptcy law provided that a person "shall be reputed, deemed and taken for a Bankrupt" if the person had undertaken any of a variety of actions "to the Intent or Purpose to defraud or hinder any of his or her Creditors ...." An Act touching Orders for Bankrupts, 1570, 13 Eliz., ch. 5, § I (Eng.). Every U.S. bankruptcy law has in essence incorporated this fraudulent transfer principle.

82.    For centuries, bankruptcy laws have provided remedies for creditors when debtors have taken unlawful actions with the intent to delay, hinder or defraud them. The first English bankruptcy law, enacted in England in 1542–43, imposed sanctions on debtors for certain kinds of actions that were "intend[ed] [to] delay or defraud their creditors deceitfully ...." *See,* An Act against Such Persons as Do Make Bankrupts, 1542–43, 34 & 35 Henry VIII, ch. 4, § IV.

83.    The next bankruptcy law, adopted in 1570, authorized an involuntary bankruptcy case against any person who engaged in certain conduct with "the Intent or Purpose to defraud or hinder any of his or her Creditors ...." *See* An Act touching Orders for Bankrupts, 1570, 13 Eliz. I, ch. 7, § 1.

84.    These antecedents are embodied today both in the bankruptcy code and in state fraudulent transfer laws, which authorize the avoidance of a transfer made with the intent "to hinder, delay or defraud" a creditor. *See* § 548(a)(1). This

24

language also appears in <u>UNIFORM FRAUDULENT TRANSFER ACT § 4(a)(1)</u> (2005); *See also* § 727(a)(2) (denying a chapter 7 discharge to a debtor who, with this intent, has transferred, removed, destroyed, mutilated or concealed property that would otherwise become property of the estate).

85.     For example, § 547(a)(1), the fraudulent transfer provision of the bankruptcy code, authorizes a trustee to avoid any transfer of property by the debtor within two years before the bankruptcy filing made with "actual intent to hinder, delay, or defraud any entity to which the debtor was ... indebted ...."

86.     The court can see that under § 362(d)(4) scheme to delay applies to fraudulent transfers on the part of the debtor and the law provides the proper construction of these terms and they were used in England and are used now in <u>§ 362(d)(4)</u>.

87.     The foregoing statutes all have a very important difference from <u>§ 362(d)(4)</u>. In every one of those statutes, the phrase "to hinder, delay, or defraud" is always in the disjunctive. In consequence, a court can find a violation if the debtor has acted with any one of the three following intents: intent to hinder, intent to delay, or intent to defraud.

88.     In contrast, <u>§ 362(d)(4)</u> uses the terms conjunctively, not disjunctively. This change in the statutory language requires that each of the terms is satisfied separately.

## Delay and Hinder

89. To qualify for relief from the automatic stay under § 362(d)(4), Fannie Mae must show that Barel engaged in a scheme to delay and hinder Fannie Mae if it was a creditor. Under fraudulent transfer law, "hinder" and "delay" have the same meaning. *See, e.g., In re Braus,* 248 F. 55, 64 (2d Cir.1917). To delay and hinder a creditor is to forestall its efforts in collecting on its debt unlawfully.

90. "Hinder" and "delay", as used in the fraudulent transfer context, are subject to a very important judicial gloss. Only "unlawful" hindrance or delay can be counted for fraudulent transfer purposes. *See, e.g., id.; Irving Trust Co. v. Chase Nat'l Bank,* 65 F.2d 409, 412 (2d Cir.1933); *Richardson v. Germania Bank,* 263 F. 320, 324 (2d Cir.1919); *Sargent v. Blake,* 160 F. 57 (8th Cir.1908). An ordinary hindrance or delay is insufficient to support a claim for fraudulent transfer if there was one. On the motion, Fannie Mae does not claim that there was a fraudulent transfer, however to the contrary in his federal civil case Barel certainly has shown that Fannie Mae, although not named the defendant, is part of the fraudulent transfer of Barel's property to Fannie Mae.

91. In consequence, any lawful delay, such as the filing of a bankruptcy case or the transfer of property from an individual to a corporation controlled by that individual, does not qualify as a delay under this statutory language. Perforce, such a delay also is not evidence to support a violation of § 362(d)(4). Barel did not

transfer the property to anyone let alone a corporation and simply filed for bankruptcy protection to protect his property from fraudulent transfer perpetrated by numerous entities.

92.    Consequently, Fannie Mae fails under the test of delay and hinder.

**(5) a third purpose of the scheme was to defraud creditors;**

**Defraud**

93.    By the same token, Fannie Mae cannot prevail under § 362(d)(4) unless, in addition to showing that Barel has engaged in a scheme to delay and hinder its creditors, which Fannie Mae is not a creditor. It must show that Barel has engaged in a scheme to defraud its creditors. As with the "hinder and delay" element, the filing of a bankruptcy case cannot alone constitute a scheme to defraud under § 362(d)(4).

94.    On a motion, Fannie Mae once again fails to show that Barel has engaged in a scheme to defraud creditors let alone Fannie Mae.

**(6)    the scheme involved a transfer of all or part ownership in real property without the    consent of the secured creditor or court approval; and**

**(7)    the creditor had a right to consent to the transfer (absent court approval).**

95.    It is obvious that the sixth and the seventh elements are not applicable in the instant case.

96.     Therefore, after careful review of the requirements to satisfy 11 U.S.C. §
362(b)(4)(D)(A) or (B) for the lift of automatic stay Fannie Mae utterly fails and
the Bankruptcy Court erred in granting the motion pursuant to 11 U.S.C. 362(b)(4).

## D.     Bankruptcy Court erred in granting Fannie Mae motion for Lift of Automatic Stay after the Res was abandoned by the bankruptcy trustee, the court lacked In Rem jurisdiction over the Res.

97.     On May 22, 2019, the Bankruptcy Court has issued an Order to abandon the
property of the estate. (**A468-A470,** Doc 38)

98.     The debtor's interest in the property is restored *nunc pro tunc* as of the
petition date. *Catalano v. Commissioner Internal Revenue,* 279 F.3d 682, 685 (9th
Cir.2002); *Morlan v. Universal Guar. Life Ins. Co.,* 298 F.3d 609, 617 (7th
Cir.2002)

99.     The abandoned property is removed from the bankruptcy estate, "divesting
the trustee of control over that property and divesting the Court of jurisdiction over
matters concerning the abandoned property." *In re DeVore,* 223 B.R. 193, 200 (9th
Cir. BAP 1998) ("Abandonment removes the asset from the jurisdiction of
the bankruptcy court."). The debtor holds abandoned property as if no bankruptcy
had been filed. *See also In re Dewsnup,* 908 F.2d 588, 590 (10th Cir. 1990), *aff'd*
502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); 8 *Collier on Bankruptcy* ¶
554.02[3] (15 ed. rev. 2005).

100. Fannie Mae filed an <u>In Rem</u> motion to Lift the Automatic Stay, the Bankruptcy Court lacked jurisdiction over an In Rem part of the Res because the property has been abandoned by the bankruptcy trustee and the court.

## CONCLUSION

Bankruptcy Court erred and/or abused its discretion in denying Barel's Motion for an Order to Enforce the Automatic Stay/Injunction. It is clear from the record that Fannie Mae acquiesced by failing to respond to the Barel's opposition to motion for Lift of Automatic Stay, that fact was confirmed by their intentional failure to show up to the hearing on the same motion, and thus Fannie Mae was estopped to proceed pursuant to the doctrine of estoppel, equitable estoppel, and quasi-estoppel. As admitted on the record the Bankruptcy Court never granted any order to Fannie Mae to lift the Automatic Stay. Fannie Mae's filing of May 22, 2019, Writ of Possession and attempts to enforce it, was violation of the Automatic Stay, which was confirmed by the court on July 16, 2019, was in effect. Denial of Barel's motion to enforce the Automatic Stay/Injunction as to May 22, 2019, Writ of Possession was abuse of discretion.

Fannie Mae Requested Relief Is <u>Not</u> Warranted Under 11 U.S.C. § 362(D)(4) and Bankruptcy Court erred and/or abused its discretion when the Bankruptcy Court retroactively annulled the Automatic Stay in granting Fannie Mae motion pursuant to 11 U.S.C. § 362(D)(4).

29

The serious harmful errors in the District Court's order require that the orders be reversed and remanded. Appellant respectfully asks that this Court reverse the erroneous decision of the Bankruptcy Court.

Dated: September 16, 2019

L.S. _____

Ariel Barel, sui juris
114 Warbler Drive
Wayne, New Jersey
973-460-4444
abar4444@gmail.com

## Certificate of Compliance

The undersigned certifies pursuant to Rule 8015(h) that the attached opening brief complies with the type-volume limitation, is proportionally spaced, has a typeface of 14 points or more and, pursuant to the word-count feature of the word processing program Microsoft Word, used to prepare this brief, contains 6,964 words, exclusive of the matters that may be omitted, under Rule 8015 and is 30 pages in length.

## Certificate of Service

I hereby certify that on September 16, 2019, a true and correct copy of the foregoing document and Appendix Volume I, II, III, as well as Copies of the Transcripts dated 04/09/2019, 07/16/2019 and 07/30/2019, was served upon the following via Priority Mail:

Phelan Hallinan Diamond and Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103

L.S. _____

Ariel Barel, sui juris
114 Warbler Drive
Wayne, New Jersey
973-460-4444
abar4444@gmail.com

30